UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| | |
|---|---|
| Silverado Park Association, | No. 23-cv-3687 (KMM/DLM) |
| Plaintiff | |
| v. | **ORDER** |
| Country Mutual Insurance Company, | |
| Defendant. | |

---

Plaintiff Silverado Park Association ("Silverado") brings this suit against its insurer, Defendant Country Mutual Insurance Company ("Country Mutual"), alleging breach of contract. Silverado claims that Country Mutual has breached the insurance policy by failing to fully pay for the loss Silverado incurred as a result of a hailstorm and by refusing to participate in an appraisal of the loss. This matter is before the Court on Silverado's motion to compel an appraisal and stay the litigation until the appraisal is completed. For the reasons that follow, Silverado's motion is granted.

## BACKGROUND

Silverado is a common interest community consisting of seventeen townhome units in Mankato, Minnesota. Country Mutual insures Silverado under a business owner's policy ("the Policy") from losses caused by, among other things, hail and windstorms. Hammond Decl., Ex. 1 (Policy). The Policy includes two provisions that are especially relevant here. The first governs when Silverado or Country Mutual can demand appraisal. Appraisal panels "have authority to decide the amount of loss but may not construe the policy or

1

decide whether the insurer should pay. . . . But the line between liability and damage questions is not always clear[.]" *Quade v. Secura Ins.*, 814 N.W.2d 703, 706 (Minn. 2012) (internal quotations and citations omitted). The appraisal provision in this case states that if Silverado and Country Mutual "disagree on the value of the property or the amount of loss, either may make a written demand for an appraisal of the loss." Policy 108. Once a demand has been made, each side selects an impartial appraiser, and the appraisers select an umpire. *Id.* Even when an appraisal occurs, Country Mutual retains its "right to deny the claim." *Id.* at 109.

The second provision is entitled "Loss Payment." *Id.* at 109–10, 162. It specifies when Country Mutual will pay the value of lost or damaged property, pay the cost of repair or replacement, take all or a part of the property at an appraised value, or repair, rebuild, or replace the property. Further, Country Mutual agrees to pay no more than the least of three options: (1) the limits of insurance; (2) the cost of replacement; or (3) the amount that Silverado actually spends that is necessary to repair or replace the lost or damaged property. *Id.* at 162.[1]

On April 12, 2022, a wind and hailstorm damaged Silverado's seventeen townhomes, including the roofs and gutters. On June 15, 2022, Legacy Restoration LLC

---

[1] The copy of the full Policy attached to the Hammond Declaration includes one version of the Loss Payment provision in the body of the main policy document. Policy at 109–10. It also includes an endorsement that replaces some of the language in the relevant part of the Loss Payment Provision (paragraph E.5.d.(1)(a)) with new terminology. *Id.* at 162. Country Mutual provided an excerpt of the Policy including the Loss Payment provision found in the main policy document. Prouty Decl., Ex. 19. Country Mutual does not refer to the endorsement, but neither side argues that the differences between the main document and the endorsement are relevant to this dispute.

("Legacy") prepared an estimate of the repairs for Silverado totaling $936,522.79. Hammond Decl., Ex. 2 (Legacy Estimate). Silverado paid Legacy $193,694.66, an amount equivalent to Silverado's insurance deductible. Hammond Decl., Ex. 4. Under Silverado's contract with Legacy, Silverado authorizes Legacy to pursue Silverado's best interests for the replacement of a roof, siding, windows, and gutters, at a price agreeable to both Country Mutual and Legacy. Further, the contract with Legacy states that Silverado will not have to pay anything more than the insurance deductible.[2] Prouty Decl., Ex. 11.

Country Mutual prepared its own estimate of the costs for fixing the roof. Country Mutual's estimate predicts a Replacement Cost Value, or RCV, of $544,169.83 to fix the roof. Hammond Decl., Ex. 3 (Country Estimate).

Silverado also retained Fulcrum Claims Consultants ("Fulcrum") as its public adjuster, and Fulcrum prepared yet another estimate for Silverado. Hammond Decl., Ex. 7 (Fulcrum Estimate). Through Fulcrum, Silverado provided a sworn statement in proof of loss indicating that the RCV for fixing the townhomes' roofs and gutters was $1,300,230.29 (with an actual cash value or ACV of $1,154,807.27). *Id.* Thus, both the Fulcrum Estimate and the Legacy Estimate exceeded the Country Mutual Estimate by a substantial amount, and the Fulcrum Estimate was by far the greatest.

---

[2] Country Mutual served a subpoena on Silverado's public adjuster, Fulcrum Claim Consultants, and obtained documents related to this case. Fulcrum's file included the $936,000 Legacy Estimate that was substantially lower than the $1.3 million estimate that Silverado had submitted in connection with its proof of loss. Prouty Decl., Exs. 9–10; Prouty Decl., Ex. 12 (Legacy Estimate). Country Mutual asserts that Silverado had not provided this information to the insurer previously. Although Country Mutual discusses this alleged nondisclosure in its briefing on the motion to compel appraisal and argues that it will ultimately allow Country Mutual to prevail, it does not appear to argue that this issue allows Country Mutual to refuse to participate in an appraisal.

Silverado requested appraisal on February 17, 2023 in writing through its attorney Bradley Hammond. Hammond Decl., Ex. 5. Silverado selected an appraiser as contemplated by the Policy's appraisal provision. In response, on March 8, 2023, Country Mutual's counsel, Beth Prouty, identified Country Mutual's chosen appraiser. Hammond Decl., Ex. 6. However, the appraisal never happened.

On March 5, 2023, Country Mutual sent Mr. Hammond a letter asking for a variety of documents from Silverado. Prouty Decl., Ex. 2. Mr. Hammond responded on Silverado's behalf, stating "no repairs have been made; therefore no invoices are known to exist." He further stated, "no repairs have been made; therefore no payments have been made." Prouty Decl., Ex. 3. Hammond repeated these statements in another letter dated April 24, 2023. Prouty Decl., Ex. 4. But Silverado had, in fact, completed at least some repairs.

Country Mutual submitted public records requests to the City of Mankato, and on August 21, 2023, it obtained building permit application records. These documents showed that, after the April 2022 storm, Silverado had obtained permits for and completed work on its townhomes. Prouty Decl., Ex. 5. Country Mutual raised this issue with Mr. Hammond and noted its inconsistency with his earlier statements. Mr. Hammond explained that he was unaware of the repairs and assumed no work was performed because the documentation from his client did not include invoices for repairs. Prouty Decl., Ex. 6. On September 18, 2023, Country Mutual told Silverado that it would not move forward with an appraisal unless Silverado provided additional documentation. Prouty Decl., Ex. 7.

On September 29, 2023, Country Mutual took Silverado's Vice President's examination under oath. Silverado's Vice President confirmed that Silverado's agreement

4

with Legacy limited the amounts that Silverado had to pay to Legacy to the $193,694.66 deductible amount that Silverado already paid. Silverado's VP also stated that Silverado demanded appraisal because the gutters have not yet been replaced. Prouty Decl., Ex. 16 (EUO Tr.) at 20–26.

Country Mutual increased its estimate by approximately $58,000 to account for the cost of replacing the gutters. Prouty Decl., Ex. 18. To date, Country Mutual has paid Silverado $455,068.91, which is the amount of Country Mutual's revised estimate ($648,742.56) reduced by Silverado's deductible ($193,673.65). Prouty Decl., Ex. 18.

## DISCUSSION

### I. Motion to Compel Appraisal

#### A. Legal Standards

In insurance cases such as this, courts treat motions to compel appraisal as motions for partial summary judgment. *McCoy v. Am. Fam. Mut. Ins. Co.*, 189 F. Supp. 3d 896, 900 (D. Minn. 2016) (citing *Dewall v. Am. Family Mut. Ins. Co.*, No. 15–cv–1954, 2015 WL 5719143, at *1 (D. Minn. Sept. 29, 2015); *see also St. Panteleimon Russian Orthodox Church v. Church Mut. Ins. Co.*, No. 13–cv–1977, 2013 WL 6190400, at *3–4 (D. Minn. Nov. 27, 2013)). Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In considering whether Silverado is entitled to an order compelling appraisal, the Court views the evidence in the light most favorable to Country Mutual as the nonmoving party, makes no credibility determinations, and does not weigh the evidence. *See Cottrell v. Am. Fam. Mut. Ins. Co., S.I.*, 930 F.3d 969, 971 (8th Cir. 2019).

Silverado is entitled to an order compelling appraisal if the undisputed material facts show that (1) there is a valid agreement, (2) Silverado performed any conditions precedent to demanding that Country Mutual engage in an appraisal; and (3) Country Mutual breached the agreement. *McCoy*, 189 F. Supp. 3d at 900 (citing *Lyon Fin. Servs., Inc. v. Ill. Paper & Copier Co.*, 848 N.W.2d 539, 543 (Minn. 2014)).[3] The Court interprets the meaning of the Policy in this case according to Minnesota's law of contract interpretation, meaning the Court construes the policy as a whole, giving effect to all its provisions, and gives unambiguous language its plain and ordinary meaning. *E.g.*, *Maplebrook Ests. Homeowner's Ass'n, Inc. v. Hartford Fire Ins. Co.*, No. 21-cv-01532 (SRN/DJF), 2024 WL 869069, at *12 (D. Minn. Feb. 29, 2024) (citing *Cedar Bluff Townhome Condo Ass'n v. American Family Mut. Ins. Co.*, 857 N.W.2d 290, 294 (Minn. 2014)).

There is no dispute here that the Policy is a valid agreement. Nor is there any dispute that Country Mutual has refused to participate in an appraisal. Silverado asserts that there genuine dispute that the parties disagree about the amount of the loss, and therefore the Policy requires Country Mutual to participate in an appraisal. Country Mutual argues that it has not breached the Policy by refusing to go to appraisal because Silverado has not fulfilled all conditions precedent to demanding an appraisal.

**B. Analysis**

The Policy's appraisal provision states that either Silverado or Country Mutual can demand appraisal when the parties disagree as to the amount of loss. Silverado demanded

---

[3] The parties agree that the Court must apply Minnesota law on substantive issues in this diversity case. *McCoy*, 189 F. Supp. 2d at 900.

appraisal pursuant to this provision. Regarding the amount of loss, three separate estimates provide differing assessments of the full cost of repairs: the Legacy Estimate, the Fulcrum Estimate, and the Country Mutual Estimate. The Legacy Estimate suggests that repairs or replacement costs over $930,000. The Fulcrum Estimate values the cost of repair or replacement at over $1,300,000. And Country Mutual's revised estimate is just under $650,000. Silverado argues that these divergent estimates demonstrate that there is a disagreement between it and Country Mutual as to the amount of loss.

The Court agrees. Country Mutual takes the position that the amount of loss is equivalent to its own estimate. Silverado's contractor's estimate is nearly $300,000 more, and its public adjuster's estimate values the loss even higher still. Simply put, the parties "disagree on the amount of loss." Policy 108. Silverado demanded an appraisal. Under these circumstances the Court finds that Silverado was entitled to demand appraisal and by refusing to participate in an appraisal, Country Mutual breached its obligations under the Policy's appraisal provision. *See McCoy*, 189 F. Supp. 3d at 903 (granting motion to compel appraisal where the estimates of the insurer and the insured differed significantly).

Country Mutual argues that the Loss Payment provision establishes a condition precedent to an appraisal demand. According to Country Mutual, this provision creates three conditions precedent to appraisal in a case where repairs have been made: (1) the damaged property has actually been repaired; (2) the insured actually spent money on the repairs; and (3) the expenditure was necessary to repair or replace the damaged property. Country Mutual argues that because Silverado does not have invoices or other documents

evidencing the amounts Silverado itself actually spent for repairs to be made it has failed to satisfy a condition precedent to being entitled to appraisal. Def.'s Mem. 8–12.

Not so. "Under Minnesota law, a condition precedent is an event, including the other party's performance, that must occur before a party is required to perform a certain contractual duty. . . . If the event required by the condition does not occur, there is no breach of contract." *Patrick's Rest., LLC v. Singh*, No. 18-cv-00764 (ECT/KMM), 2019 WL 2869082, at *12 (D. Minn. July 3, 2019) (cleaned up). The Policy does not make either party's obligation to participate in an appraisal party depend upon any event identified in the Loss Payment provision, and Country Mutual does not explain why its terms purportedly do so.

The Loss Payment provision states:

> **5. Loss Payment**
>
> In the event of loss or damage covered by this policy:
>
>> d. [W]e will determine the value of Covered Property as follows:
>>
>>> (1) At replacement cost without deduction for depreciation, subject to the following:
>>>
>>>> (a) **We will pay the cost to repair or replace**, after application of the deductible and without deduction

>> for depreciation, **but not more than the least of the following amounts**:
>> 
>>> (i) The Limit of Insurance under Section I – Property that applies to the lost or damaged property;
>>> 
>>> (ii) The cost to replace, on the same premises, the lost or damaged property with other property[;] or
>>> 
>>> (iii) **The amount that you actually spend that is necessary to repair or replace the lost or damaged property.**

Policy 162 (emphasis added). The Loss Payment provision does not refer to the appraisal provision. Nor does the appraisal provision mention the Loss Payment provision. Country Mutual points to no other part of the Policy that suggests participation in appraisal is contingent on this provision.

The only case located by the Court addressing an argument like the one Country Mutual raises here rejects it. *Dueto v. State Farm Fire & Cas. Co.*, 635 F. Supp. 3d 1142, 1149 (D. Colo. 2022). Although *Dueto* applies Colorado law, it is directly on point, and no differences between the two states' laws appear relevant. State Farm argued that it was not required to go to appraisal because the insured's property had been repaired, payments had been made, and even though the plaintiff produced an Xactimate estimate, he could not obtain RCV benefits without first producing evidence of "what he had actually and necessarily spent for his contractor to perform the repair work." *Id.* Although the *Dueto* court acknowledged State Farm's argument might or might not influence "the ultimate coverage determination," it held that "it is not a basis for determining whether the appraisal demand was defective" for several reasons. *Id.* Just like the appraisal provision at issue in

9

this case, the appraisal provision at issue in *Dueto* did "not expressly prohibit estimates, nor does it differentiate between the itemizations that must be provided before repairs and itemizations that must be provided after repairs." *Id.*

The decisions from this District denying motions to compel appraisal that Country Mutual relies on do not support its position. In *Darmer v. State Farm Fire & Cas. Co.*, No. 17-cv-4309 (JRT/KMM), 2018 WL 3325908 (D. Minn. July 6, 2018), the court[4] found that an "insured could not demand appraisal without reasonably complying with his or her 'duties after loss.'" *Id.* at *5. The *Darmer* court found issues of material fact precluded an order compelling appraisal because it was genuinely disputed whether the plaintiff had complied with those duties. *Id.* Similarly, in *St. Panteleimon*, the court was unable to determine whether the insured church had complied with its obligations under the policy to trigger the appraisal clause. 2015 WL 283044, at *6–7.

But unlike *Darmer* and *St. Panteleimon*, Country Mutual does not demonstrate a genuine fact dispute regarding Silverado's compliance with its duties after loss under the Policy. Here, as in the cases Country Mutual cites, Silverado's Policy includes terms regarding its "Duties In The Event Of Loss Or Damage." For example, after a loss, Silverado must provide prompt notice of the loss to Country Mutual; take reasonable steps to protect the property from additional damages; give Country Mutual inventories of

---

[4] The undersigned District Judge prepared the Report and Recommendation in *Darmer* while she was a United States Magistrate Judge. *Darmer v. State Farm Fire and Cas. Co.*, No. 0:17-cv-04309 (JRT/KMM), 2018 WL 4443167 (D. Minn. Feb. 26, 2018). The Court cites to United States District Judge John R. Tunheim's Order accepting the R&R and denying the plaintiff's motion to compel appraisal.

10

damaged property, including the amount of loss claimed; allow Country Mutual reasonable access to the property for inspections; and sit for an examination under oath. *See* Policy 108 ¶ E.3.a.–b. Country Mutual does not refer to these duties in its opposition, and as stated above, the Loss Payment provision does not comparably provide obligations for the insured that could be construed as conditions to demanding appraisal.

The last two cases cited by Country Mutual likewise do not change this conclusion. In *Ariel, Inc. v. State Farm Fire & Casualty Co.,* No. 27-cv-22-8407 (Henn. Cnty. Feb. 14, 2024),[5] the Hennepin County District Court granted State Farm's motion for summary judgment on the plaintiff's claim seeking to compel an appraisal. The court held that the plaintiff's appraisal demand was time-barred. Alternatively, the court found that the insured could not rely on an estimate prepared by its public adjuster to show there was a disagreement as to the amount of loss. As a result it found that "appraisal would be futile because the building repair is finished and there is no disagreement over the amount of loss." Country Mutual similarly suggests that appraisal would be futile here. But the *Ariel*

---

[5] A copy of the *Ariel* decision is in the record at docket entry 20-1 and as Exhibit 19 to the Prouty Declaration.

court reached that conclusion on a complete record submitted at the close of litigation. The vastly different procedural posture limits *Ariel*'s persuasive value in this case.[6]

The decision in *Natureview Vista Twinhome Association v. Travelers Indemnity Co.*, No. 22-cv-2027 (ECT/DJF), 2024 WL 1718040 (D. Minn. April 22, 2024) is also distinguishable because of its very different procedural posture and the fundamentally different question—ultimate liability—it addresses.[7] Most notably, *Natureview* did not involve a request to compel appraisal at all. Indeed, even before the plaintiff filed suit, there had already been an appraisal and an award from an appraisal panel. *Id.* at *2. The *Natureview* court granted summary judgment in favor of the insured where the plaintiff's contractor completed repairs on the property and the plaintiff claimed to be entitled to the full RCV award from the appraisal panel because the insured failed to show that it actually spent a greater amount than the insurer had already paid. *See id.* at *5. Admittedly, the plaintiff in *Natureview* had an agreement with its contractor similar to Silverado's agreement with Legacy, requiring it to pay no more than its deductible, and the court analyzed a policy provision similar to the Loss Payment provision at issue in this case. *Id.* at *2, 5. But whatever impact *Natureview*'s holding may have on Silverado's ultimate

---

[6] An appeal is currently pending in *Ariel*, but it is unclear whether the relevant portion of the district court's ruling will even need to be addressed. The Minnesota Court of Appeals might affirm based on the untimely appraisal demand and never reach the proposition for which Country Mutual cites the district court's decision. As for the *Ariel* district court's determination that appraisal was futile, that issue appears to be a matter of first impression for the Minnesota appellate courts. With due respect to the *Ariel* court, it is not clear that the Minnesota Supreme Court would ultimately hold that sending a case to appraisal is futile whenever repairs have been made, the insurer makes some payments for the documented cost of repairs, but the insured seeks appraisal because its estimates value the loss at a higher amount.

[7] Country Mutual's letter citing *Natureview* is at docket entry 60.

ability to recover sums allegedly owed under the policy, it does not stand for the proposition that a loss payment provision like the one at issue here operates as a condition precedent to demanding appraisal. In fact, the decision does not say anything about when an insured is entitled to go to appraisal.

For all these reasons, Silverado has shown that there is no genuine dispute of material fact and it is entitled to summary judgment on its claim that Country Mutual breached the Policy by refusing to participate in an appraisal. Silverado's motion to compel appraisal is, therefore, granted.

**II.     Motion to Stay**

Silverado also asks the Court to stay the litigation pending the outcome of the appraisal process. Silverado emphasizes that staying the litigation would be consistent with the policies behind the appraisal process, including promoting early resolution of disagreements and increasing efficiency and minimizing costs for potential litigation. Country Mutual argues that even if the Court orders appraisal, it should allow litigation to proceed simultaneously because "Silverado has not shown that the results of any appraisal are likely to moot the need for [Country Mutual] to take discovery in support of its coverage defenses." Further, Country Mutual suggests that no matter the outcome of the appraisal, ongoing litigation and discovery regarding its defenses will necessarily not be wasted. Def.'s Mem. 13–14.

There is no set rule for whether litigation should be stayed pending completion of appraisal. Courts within this District have reached different conclusions about whether to stay litigation pending the outcome of an appraisal. *Compare White Bear Yacht Club v.*

*Cincinnati Ins. Co.*, 582 F. Supp. 3d 624, 631–32 (D. Minn. 2022) (denying request to stay litigation pending appraisal and finding that insurer should be permitted to take discovery relevant to liability defenses on claims of breach for non-payment), *with Axis Surplus Ins. Co. v. Condor Corp.*, No. 20-cv-789 (DSD/KMM), 2020 WL 7974330, at *2–3 (D. Minn. Oct. 8, 2020) (staying litigation pending completion of appraisal), *and Snyder v. Am. Fam. Ins. Co.*, No. 16-cv-458 (DWF/JSM), 2016 WL 5796838, at *3–6 (D. Minn. Oct. 3, 2016) (same).

District courts have considerable discretion to stay proceedings to control their own dockets. *See Lindell v. United States*, No. 22-cv-2290 (ECT/ECW), 2022 WL 17068785, at *1 (D. Minn. Nov. 17, 2022). The party requesting a stay has the burden to show that it is appropriate. *Kellogg v. Watts Guerra, LLP*, No. 18-cv-1082 (DWF/BRT), 2018 WL 3432048, at *1 (D. Minn. July 16, 2018). "When considering a motion to stay, courts consider the potential stay's impact on judicial resources, the hardship and inequity to the moving party if the case is not stayed, and the prejudice to the non-moving party." *Id.*

The Court finds a stay is appropriate based on the record in this proceeding. Staying the litigation has the potential to lessen the impact on judicial resources. It is no secret that parties to insurance agreements often agree to resolve disputes following an appraisal. But even if the parties cannot settle this litigation, and if the appraisal panel determines that the amount of loss is equal to or lower than Country Mutual's estimate, that determination

14

could end a substantial portion of this litigation.[8] At the same time, if the case is not stayed, Silverado will be forced to incur significant litigation expenses in pursuit of a claim that could become moot. Finally, a stay will not significantly prejudice Country Mutual. If the litigation goes forward after the appraisal is completed, Country Mutual (and Silverado) will be able to pursue discovery related to both Silverado's claims and Country Mutual's defenses and counterclaims. There is no reason to think that the appraisal process will be so protracted that witnesses' memories would significantly change or that relevant documents will be unavailable. Country Mutual makes no claim that waiting until after the appraisal process to have the discovery phase of this litigation continue will cause it any financial hardship or otherwise preclude it from having its coverage defenses fully and fairly adjudicated.

Accordingly, the Court grants Silverado's request for a stay of this litigation pending completion of the appraisal.

**ORDER**

For the reasons stated above, Plaintiff's Motion to Compel Appraisal and Stay Litigation, ECF 24, is **GRANTED** as set forth below.

1. Country Mutual shall comply with the Policy's appraisal provision.

2. The Court stays this litigation until the completion of the appraisal process—namely, when the "amount of loss" is set by the two appraisers or by one appraiser

---

[8] Such an award would not necessarily end the litigation entirely. Country Mutual's counterclaim seeks, among other things, a declaration that the Policy is void based on allegations of material misrepresentations and material noncooperation. Countercl. ¶¶ 1, 31–33.

and the umpire, as provided by the Policy. The parties shall contact the Court within seven (7) days of the completion of the appraisal process.

Date: July 29, 2024                  *s/Katherine Menendez*
                                             Katherine Menendez
                                             United States District Judge